**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TISSUENET CUSTOM APPLICATIONS,**
**LLC & TISSUENET DISTRIBUTION**
**SERVICES, LLC,**

                                        **Plaintiffs,**

-vs-                                              **Case No.  6:05-cv-1931-Orl-31KRS**

**BLOOD & TISSUE CENTER OF**
**CENTRAL TEXAS & MARSHALL G.**
**COTHRAN,**

                                        **Defendants.**
_____

**BLOOD AND TISSUE CENTER OF**
**CENTRAL TEXAS, MARSHALL G.**
**COTHRAN,**
                **Counter Claimants,**
**vs.**

**ALAN NOVOTNY, TISSUENET**
**DISTRIBUTION SERVICES, LLC and**
**TISSUENET CUSTOM APPLICATIONS,**
**LLC,**

                **Counter Defendants.**
_____

**REPORT AND RECOMMENDATION**

## TO THE UNITED STATES DISTRICT COURT

        This cause came on for consideration without oral argument on Defendant Marshall

G. Cothran's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction,

doc. no. 25, and supplement thereto, doc. no. 48.  The motion is supported by the following:

- •     Affidavit of Douglas B. Wilson, doc. no. 25-3 (Wilson Aff.);

- •     Affidavit of Marshall G. Cothran dated December 23, 2005, doc. no. 25-2 (First Cothran Aff.);

- •     Affidavit of Marshall G. Cothran dated January 20, 2006, doc. no. 25-5 (Second Cothran Aff.);

- •     Affidavit of Marshall G. Cothran dated May 30, 2006, doc. no. 48-2, ex. 4 (Third Cothran Aff.);

- •     Excerpts from the Deposition of Marshall G. Cothran, doc. no. 48-2, ex. 2 (Cothran Dep.);

- •     Email messages from Cothran to Arlin Hall and others dated April 18, 2005, doc. no. 48-3, ex. 3;

- •     Email message from Linda Printz to John Schenkel and others dated September 9, 2005, doc. no. 48-3, ex. 6;

- •     Email message from Printz to Cothran and others dated October 12, 2005, doc. no. 48-3, ex. 7;

as well as papers in the Court's file and case law.

      Plaintiffs TissueNet Custom Applications, LLC (Applications) and Tissue Distribution Services, LLC (Distribution) filed a memorandum of law and supplemental memorandum of law in response to Cothran's motion.  Doc. Nos. 30, 46.  Plaintiffs submitted the following in support of their memoranda:

-2-

- Affidavit of Alan J. Novotny dated February 20, 2006, doc. no. 30-2 (First Novotny Aff.);

- Affidavit of Alan J. Novotny dated May 18, 2006, doc. no. 47-2 (Second Novotny Aff.);

- Affidavit of John R. Daniel, doc. no. 47-3 (Daniel Aff.);

- Complete deposition of Marshal G. Cothran and supporting exhibits, doc. nos. 47-4, 47-5, 47-6 (Cothran Dep.);

- Copy of a document entitled "Tissue Donation Partnership" dated November 2005, doc. no. 30-3.

The motion to dismiss has been referred to me by the Honorable Gregory A. Presnell, presiding district judge, for issuance of a report and recommendation.

## I. PROCEDURAL HISTORY.

Plaintiffs filed a Complaint against Defendant The Blood and Tissue Center of Central Texas (BTC) and Cothran in Florida state court. Plaintiffs alleged causes of action for breach of contract, negligent misrepresentation, and replevin. Doc. No. 2.

In the Complaint, Plaintiffs alleged as follows: On approximately December 30, 2003, Applications and BTC entered into a written contract under which BTC agreed to produce a minimum of 200 allograft constructs per month using Applications' equipment for five years under a specified fee schedule. *Id.* ¶ 6 & ex. A. On approximately March 11, 2004, Distribution and BTC entered into a written contract under which BTC agreed to provide base bone processing services of at least three to five donors per month for five

years under a specified fee schedule.  *Id.* ¶ 7 & ex. B.  Plaintiffs paid BTC approximately

$750,000 under these contracts.  *Id.* ¶ 8

In October 2005, BTC advised Plaintiffs that it would cease performance under the

contracts due to internal business difficulties. *Id.* ¶ 8.  On approximately November 17,

2005, BTC's Board of Trustees voted to close BTC's tissue processing operation. *Id.* ¶ 9.

BTC closed its processing operations on approximately December 1, 2005. *Id.* ¶ 10.

Plaintiffs further alleged that before BTC closed its processing operations, BTC's Chief

Executive Officer, Marshall G. Cothran, committed a tortious act in Florida by making

representations that BTC "was committed to staying in the tissue processing business

despite recently losing money," *id.* ¶ 26, that BTC "would soon be able to expand capacity

to meet Plaintiffs' future needs," *id.* ¶ 29, and by urging "Plaintiffs not to negotiate with

other suppliers or to build their own facility . . . ," *id.*  Plaintiffs alleged that  Cothran should

have known that these representations were false at the time he made them.  *Id.* ¶ 30.

Finally, Plaintiffs alleged that BTC possessed equipment that belongs to

Applications and which should be returned to Applications.  *Id.* ¶¶ 34-39.

On December 30, 2005, BTC removed the case to this Court based on diversity of

citizenship.  Doc. No. 1.  Thereafter, BTC filed an answer to the Complaint and a

counterclaim.  Doc. No. 8.

After the case was removed, Cothran filed a motion to dismiss the Complaint for

lack of personal jurisdiction.  Doc. No. 6.

Plaintiffs requested and were given leave to file an Amended Complaint.  Doc. Nos. 13, 14.  The Court denied Cothran's motion to dismiss the Complaint as moot.  Doc. No. 16.

In the Amended Complaint, Plaintiffs assert two causes of action for breach of contract and a cause of action for replevin.  Instead of the previously alleged cause of action for negligent misrepresentation, Plaintiffs allege a cause of action for fraudulent misrepresentation.  Doc. No. 17.

In the fraudulent misrepresentation count, Plaintiffs allege that between meetings with Plaintiffs in Florida in May 2005, and in Texas in September 2005, Cothran told Plaintiffs that "BTC intended to grow and expand with Plaintiffs to meet their needs."  Doc. No. 17 ¶ 33.[1]  Plaintiffs allege that Cothran's representations were false.  *Id.* ¶ 35.  They allege that Cothran knew that the representations were false because "at the time of making the representations to Plaintiffs about expanding to meet Plaintiffs' needs . . . he intended to make an arrangement with LifeNet, following which BTC would not work with the Plaintiffs further[,]" *id.* ¶ 38.  Plaintiffs assert on information and belief that, during the time Cothran made these representations, he was negotiating an agreement with LifeNet to outsource processing of tissue products.  *Id.* ¶ 34.  As soon as BTC completed its arrangement with LifeNet, BTC advised Plaintiffs that it would not continue in the tissue processing business due to severe financial problems.  *Id.* ¶¶ 35-37.  Plaintiffs further

---

[1] Plaintiffs allege that Cothran made similar representations during a visit to Florida in May 2005 and during a meeting in Texas in September 2005.  *Id.* ¶¶ 28, 30.  In their supplemental memorandum of law, Plaintiffs indicate that the alleged false statements that they rely upon "were made in Texas," doc. no. 46 at 7.  Thus, it appears that the Plaintiffs do not presently contend that the representations Cothran made while in Florida in May 2005 were false and fraudulent.

allege that they justifiably relied upon Cothran's fraudulent representations and refrained from finalizing negotiations with other suppliers or building their own tissue processing facility. *Id.* ¶ 40.  As a result, Plaintiffs allege that they were damaged. *Id.* ¶ 41.

Cothran filed a motion to dismiss the Amended Complaint based on lack of personal jurisdiction, doc. no. 25, to which Plaintiffs responded, doc. no. 30.  I permitted the parties to conduct discovery on the issue of personal jurisdiction.  Doc. No. 41. Thereafter, the parties filed supplemental memoranda of law with supporting documents as set forth above.

## II.    STANDARD OF REVIEW.

"When the district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over the nonresident defendant. . . . 'A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for directed verdict.'" *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990)(quoting *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)).

A plaintiff has the burden "to plead sufficient material facts to establish the basis for exercise of" personal jurisdiction.  *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (citing *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991)).  If the plaintiff meets this burden, "'the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute [that provides the basis for exercising personal jurisdiction over the defendant].  If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the

complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.'" *Id.* (quoting *Prentice*, 779 F. Supp. at 583).

"The district court must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits.  When the parties' affidavit and deposition evidence conflict, the district court must construe all reasonable inferences in favor of the plaintiff."  *Cable/Home Commc'n Corp.* 902 F.2d at 855 (citations omitted).

III.   **STATEMENT OF RELEVANT FACTS.**[2]

    A.   <u>Facts Underlying the Amended Complaint</u>.

    BTC is part of the Travis County, Texas, Medical Society.  Cothran Dep. at 14-15. Of the entities associated with the Travis County Medical Society, only BTC has business in Florida. *Id.* at 15. BTC does not have an office or agency in Florida, and it does not own real estate in Florida.   Cothran Dep. at 37-38.

    Cothran is the Executive Vice President and Chief Executive Officer of BTC. Cothran Dep. at 25.  Arlin Hall is the Chief Financial Officer of BTC.  Cothran Dep. at 24. Karen Mosley was the Chief Operating Officer of BTC.  Cothran Dep. at 26.  Linda Printz succeeded Mosley in that job.  Cothran Dep. at 28-29.

    Applications and Distribution have their principal places of business in Orlando, Florida.  Alan J. Novotny is the CEO of Applications and Distribution.  First Novotny Aff. ¶¶ 1, 3.  John Schenkel is Plaintiffs' Chief Financial Officer.  Second Novotny Aff. ¶ 14.

---

[2]  The parties submitted evidence about BTC's work with a consultant, John Daniel, and federal regulatory inquiries regarding BTC.  I have reviewed that evidence, but I have not recited it in this report because it is not relevant to the issues of personal jurisdiction over Cothran.

Melissa Hancock is Plaintiffs' Operations Manager.  Cothran Dep. ex. 18. Novotny, Schnekel and Hancock worked from offices in Orlando, Florida.  First Novotny Aff. ¶ 3; Cothran Dep. ex. 18 (Hancock address in Orlando), and ex. 28 (implying that John Schnekel and Melissa Hancock work from the Orlando office).

Around December 30, 2003, Applications and BTC entered into a contract under which BTC agreed to produce a minimum of 200 allograft constructs per month using Applications' equipment for five years under a specified fee schedule.  First Novotny Aff. ¶ 4.  Around March 11, 2004, Distribution and BTC entered into a contract under which BTC agreed to supply at least three to five base bone donors per month and processing services for those donors for five years under a specified fee schedule.  *Id.* ¶ 5.  Each of these contracts was negotiated in less than three months.  Third Cothran Aff. ¶ 26.

During the course of business dealings between BTC and Plaintiffs, BTC sent products, invoices and other papers to Plaintiffs in Florida, made telephone calls to and received telephone calls from the Plaintiffs, and received payments of $750,000.00 and equipment from Plaintiffs. Cothran Dep. at 27-32; First Novotny Aff. ¶ 15; Second Novotny Aff. ¶ 7.  Cothran communicated with Plaintiffs in Florida via telephone and email.  Second Novotny Aff. ¶ 8; Cothran Dep. at 22-24, 30-31. Cothran's communications were with Novotny, Schenkel and Hancock. Cothran Dep. at 21-22.

By at least March 2005, Plaintiffs were expressing concerns about BTC's work.  *See* Cothran Dep. 53 & ex. 4.  Before May 2005, Cothran, Hall and Mosley told Plaintiffs that BTC was committed to staying in the tissue processing business despite recently losing money.  First Novotny Aff. ¶ 7.  Plaintiffs offered financial assistance to BTC to ensure that

it could continue in the tissue processing business.  BTC rejected these offers.  First Novotny Aff. ¶ 10.

In May 2005, Cothran, Hall and Mosley traveled to Florida.  Cothran Dep. at 58. During this meeting, Plaintiffs advised BTC that they were negotiating with other processing facilities to being taking surplus orders.  First Novotny Aff. ¶ 8; Second Novotny Aff. ¶ 10.  Cothran told Plaintiffs that BTC "could and would take on additional tissue processing" for Plaintiffs, that "BTC intended to grow to meet the needs of the [Plaintiffs]," and that "he believed there was an opportunity to expand and grow." First Novotny Aff. ¶ 9. The parties dispute whether Cothran urged Plaintiffs not to negotiate with other suppliers and not to build their own facility.  *Compare* First Novotny Aff. ¶ 9 *and* Second Novotny Aff. ¶ 10 *with* Third Cothran Aff. ¶ 30.

In June and July 2005, Schenkel complained that BTC's production had been low. Cothran Dep. exs. 8, 9.  Between May and September 2005, Cothran told Plaintiffs that BTC intended to grow and expand with Plaintiffs to meet their needs.  First Novotny Aff. ¶ 14.

In September 2005, Schenkel and Hancock met with Cothran and others in Texas. First Novotny Aff. ¶11; Second Novotny Aff. ¶ 47.  Schnekel presented BTC with a bonus check for exceeding its goals.  *Id.* at 40-41.  Novotny, who did not travel to Texas, avers that Cothran represented during this visit that BTC was doing well financially and was looking forward to expanding its relationship with Plaintiffs.  First Novotny Aff. ¶ 11; Second Novotny Aff. ¶ 13.  Cothran attests that he did not discuss BTC's financial situation with Plaintiffs at either the May or September 2005 meetings.  Third Cothran Aff. ¶ 31.  Rather, Cothran avers that although BTC had strong production in August, representatives of BTC

-9-

told Plaintiffs that BTC's level of production could not be sustained without orders and

tissue donors.  Cothran Dep. at 72, 83.

By September 2005, BTC's net operating losses were rapidly increasing, and its

accounts receivable due from Plaintiffs were also increasing.  Cothran Dep. at 83, 87.  As

of October 12, 2005, BTC had not made a decision about its business future.  Cothran

Dep. at 90.

On about October 10 or 12, 2005, Printz, on behalf of BTC, contacted someone at

Life-Net regarding processing musculoskeletal tissue products.  Cothran Dep. at 43; *see

also* Wilson Aff. ¶¶ 2, 6.[3]  BTC had worked with LifeNet for many years before the events at

issue in the Amended Complaint.  Cothran Dep. at 42.  LifeNet indicated interest and

invited BTC representatives for a site visit.  Cothran Dep. at 43.

By October 19, 2005, BTC decided that it would outsource its tissue processing

function. Cothran Dep. at 94 & ex. 22.  On that same day, Cothran telephoned Schenkel

and told him that BTC would be shutting down tissue processing and looking for other

processors to outsource BTC's work. Cothran Dep.at 95-97; Second Novotny Aff. ¶ 14.

Cothran indicated that BTC would complete the work in progress. Cothran Dep. at 95-97.

In November 2005, Cothran, Hall and Printz visited LifeNet in Virginia Beach,

Virginia.  Cothran Dep. at 43-44. LifeNet posted a press release on its web site dated

November 2005 in which it announced a partnership between LifeNet and BTC to produce

---

[3]  Over a two-week period, BTC also contacted other companies with which it had
existing relationships to discuss muskculoskeletal tissue processing.  Cothran Dep. at
44-45.

musculoskeletal and cardiovascular allograft tissue.  First Novotny Aff. ¶ 19; Second

Novotny Aff. ex. B.[4]

On about November 17, 2005, BTC's Board of Trustees voted to close BTC's tissue

processing operation as of December 1, 2005.  First Novotny Aff. ¶ 16.  On December 1,

2005, BTC closed its processing operations.  *Id.* ¶ 17.  BTC and LifeNet signed an

agreement in January 2006.  Cothran Dep. at 46.

B.   Cothran's Contacts with Florida.

Cothran resided in Texas from 1949 to 1988 and from June 1990 to the present.

Third Cothran Aff. ¶ 4.  Cothran lived and worked in Florida from approximately May 1988

through May or June 1990.  Cothran Dep. at 8-9.   In that job, he had five to ten clients who

lived in Florida.  *Id.* at 12.  He has not been involved in other Florida businesses.  *Id.* at 14.

Cothran currently has relatives who live in Florida whom he visits on occasion.

Cothran Dep. at 9-10.  In September 2005, Cothran, in his capacity as CEO of BTC,

attended a business conference in Florida for three days.  *Id.* at 10-11.

Cothran does not have any other ties or contacts with Florida.  Cothran Dep. at 11,

37; Third Cothran Aff. ¶¶ 5-13.  Cothran denies committing a tortious act in Florida in his

individual capacity.  Third Cothran Aff. ¶ 7.

---

[4]  Novotny opines that, based on his experience, the partnership agreement
between LifeNet and BTC would have taken several months to negotiate.  First Novotny
Aff. ¶¶ 20-21; Second Novotny Aff. ¶ 14.

## IV.    ANALYSIS.

"A federal court sitting in diversity may properly exercise jurisdiction over a defendant only if two requirements are met: (1) the state long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999). "[T]he construction and application of the Florida Long-Arm statute is a question of Florida law . . . ." *Horizon Aggressive Growth L.P. v. Rothstein-Kass P.A.*, 421 F.3d 1162, 1166-67 (11th Cir. 2005).

The Florida long-arm statute provides both specific and general bases for exercising jurisdiction over a non-resident defendant. Specific jurisdiction exists "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. . . ." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). General  jurisdiction exists "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum. . . ." *Id.* at 415 n. 9. Plaintiffs assert that this Court can exercise both specific and general jurisdiction over Cothran.

Cothran contends that specific jurisdiction does not exist because Plaintiffs cannot prove that he committed a tortious act in Florida and judicial estoppel precludes Plaintiffs from making such a claim.  He argues that general jurisdiction also does not exist because his contacts with Florida were in his corporate, rather than his individual capacity.  I will address the judicial estoppel argument before turning to the substance of the jurisdiction arguments.

A.   <u>Judicial Estoppel</u>.

"[J]udicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)).  It is an equitable doctrine invoked in a court's discretion. *Id*. at 750.

The United States Court of Appeals for the Eleventh Circuit instructs courts to examine two factors in determining whether judicial estoppel should apply.  "[F]irst, it must be established that the allegedly inconsistent positions were made under oath in a prior proceeding[5]; and second, the inconsistencies must have been calculated to make a mockery of the judicial system." *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1335  (11th Cir. 2005).

Cothran contends that judicial estoppel should apply because Plaintiffs amended their complaint to state a cause of action sounding in fraud rather than negligent misrepresentation to avoid application of the corporate shield doctrine.  The corporate shield doctrine provides that the Florida long-arm statute does not subject an individual to personal jurisdiction for performing a  negligent act solely in his capacity as an employee of a corporation.  *See Doe v. Thompson*, 620 So. 2d 1004 (Fla. 1993).  However, the corporate shield doctrine does not relieve a corporate officer who committed fraud or other

_____

[5]  Judicial estoppel has also been applied to prevent a party who prevailed on an argument in one phase of a case from relying on a contrary argument in another phase of the case. *See Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1369-70 (S.D. Fla. 2005).

intentional misconduct from the reach of the long-arm statute.  *See Id.* at 1006 n.1; *Allerton v. State*, 635 So. 2d 36, 39 (Fla. 1st Dist. Ct. App. 1994).

Turning to the factors set forth by the Eleventh Circuit, the causes of action asserted by the Plaintiffs in this case are not clearly inconsistent.  In both the original and amended complaints, Plaintiffs allege that Cothran made false statements.

Furthermore, there is also no basis to conclude that Plaintiffs' decision to amend the complaint was calculated to make a mockery of the judicial system.  The Court never considered the merits of the negligent misrepresentation claim.  The amendment was made early in the litigation and before the Court considered the merits of Cothran's motion to dismiss.     Furthermore, Plaintiffs adequately alleged a cause of action for fraudulent misrepresentation.  The elements of fraudulent misrepresentation are as follows: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985). In the Amended Complaint, Plaintiffs allege that Cothran made false statements regarding BTC's intention to grow and expand to meet Plaintiffs' needs, that Cothran knew these statements were false, that the statements were made with an intent that Plaintiffs would rely upon them, and that Plaintiffs were injured by acting in reliance on Cothran's representations.

Accordingly, judicial estoppel does not apply to bar Plaintiffs from alleging that Cothran made fraudulent representations that subject him to personal jurisdiction in Florida.

B.     Specific Jurisdiction.

To support the exercise of specific jurisdiction over Cothran in Florida, the Plaintiffs

rely on Florida Statute § 48.193(1)(b), which provides as follows:

> (1)     Any person, whether or not a citizen or resident of this
> state, who personally or through an agent does any of the acts
> enumerated in this subsection thereby submits himself . . . to
> the jurisdiction of the courts of this state for any cause of action
> arising from the doing of any of the following acts:
>
>              . . . .
>
> (b)     Committing a tortious act within the state.
>
> 1.     *Application of the Long-Arm Statute*.

Plaintiffs contend that Cothran's making of fraudulent representations to them

constitutes the commission of a tortious act in Florida.  Under Florida law, a person need

not be physically present in Florida to commit a tortious act within the state.  Rather, a

person can commit a tortious act in Florida within the meaning of section 48.193(1)(b) "by

making telephonic, electronic, or written communications into [Florida], provided that the

tort alleged arises from such communications."  *Wendt v. Horowitz*, 822 So. 2d 1252, 1253

(Fla. 2002).  In this case, Plaintiffs allege that, while in Texas, Cothran made false

representations to Plaintiffs' representatives.  The evidence establishes that the Plaintiffs'

representatives to whom Cothran made these representations had their business offices  in

Florida.

As discussed above, the Amended Complaint adequately alleges the tort of

fraudulent misrepresentation.  Through Novotny's affidavits, Plaintiffs have presented a

*prima facie* case that such tort occurred sufficient to withstand a motion for a directed

verdict.

Cothran's primary contention is that Plaintiffs have not established that he actually committed the tort of fraudulent representation.  The Court cannot decide the merits of the cause of action unless it has personal jurisdiction over Cothran. Therefore, in deciding whether the Court can exercise specific jurisdiction over a defendant, the question is "'whether the tort *as alleged* occurred *in Florida*, and not whether the alleged tort *actually occurred.*'" *OSI Indus., Inc. v. Carter*, 834 So. 2d 362, 367 (Fla. 5th Dist. Ct. App. 2003)(quoting *Walter Lorenz Surgical, Inc. v. Teague*, 721 So. 2d 358, 359 (Fla. 1st Dist. Ct. App. 1998)); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d at 1250 (stating that a full-scale trial on the merits is not required to resolve a motion to dismiss for lack of personal jurisdiction).

In this case, Plaintiffs aver that Cothran knowingly represented to their representatives that BTC intended to grow and expand with Plaintiffs to meet their needs. Cothran avers that all of his communications with BTC were with Novotny, Schenkel or Hancock.  Novotny, Schenkel and Hancock work in Florida.  Cothran does not contend that he did not speak to Plaintiffs' representatives.  Although Cothran denies that he urged Plaintiffs not to negotiate with other suppliers and not to build their own facility and he denies discussing BTC's financial situation with Plaintiffs, he does not deny that he told Plaintiffs' representatives that BTC intended to grow and expand with Plaintiffs to meet their needs. Whether or not the statements about growing and expanding with Plaintiffs to meet their needs were false is a matter that need not be decided now.  Rather, it is sufficient that the tort of fraudulent representation, as alleged, occurred via communications Cothran made to Plaintiffs' representatives who work in Florida, that the

-16-

alleged tort arose from these communications, and that Plaintiffs were injured in Florida as a result of reliance on the communications.

The undisputed evidence is that Cothran made the allegedly false statements to Plaintiffs' representatives in Florida, and that the alleged tort arose from these communications. Plaintiffs aver that they were injured as a result of reliance on Cothran's communications. This is sufficient for the Court to acquire personal jurisdiction over Cothran under section 48.193(1)(b).

        2.    *Minimum Contacts.*

In order for the Court to exercise specific jurisdiction over Cothran consistently with due process, Plaintiffs must also establish that Cothran had sufficient "minimum contacts" with Florida and that exercise of personal jurisdiction over Cothran would not undermine traditional notions of fair play and substantial justice. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). The Eleventh Circuit follows a three-part test to decide if the minimum contacts requirement is satisfied:

> First, the contacts must be related to the plaintiff's cause of action . . . . Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum. . . . Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

*Posner*, 178 F.3d at 1220 (citing *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1546 (11th Cir. 1993)).

Cothran contends that he has no personal contacts with Florida related to the cause of action because all of his contacts were in his capacity as an officer of BTC. As discussed above, under Florida law the corporate shield doctrine does not relieve a

corporate officer who committed fraud or other intentional misconduct from the reach of the long-arm statute.  *See Doe*, 620 So. 2d at 1006 n.1; *Allerton*, 635 So. 2d at 39.

The United States Supreme Court considered the corporate-shield argument in the context of a challenge to personal jurisdiction in *Calder v. Jones*, 465 U.S. 783 (1984).  In that case, Shirley Jones and her husband sued the National Enquirer and two of its employees in California alleging that Jones had been libeled in an article written and edited by the individual defendants in Florida.  The individual defendants, who lived in Florida, moved to quash service of process against them arguing that the California court lacked personal jurisdiction over them.

The Supreme Court found that each of the individual defendants had sufficient minimum contacts with California to support exercise of jurisdiction over them.  The Supreme Court explained its reasoning as follows:

> In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." . . . The allegedly libelous story concerned the California activities of a California resident.  It impugned the professionalism of an entertainer whose television career was centered in California.  The article was drawn from California sources, and the brunt of the harm . . . was suffered in California.  In sum, California is the focal point both of the story and of the harm suffered.  Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

*Id.* at 788-89 (internal citations and footnotes omitted).  The Court rejected the individual defendants' arguments that they were ordinary employees who were not able to control their employer's marketing activity.  The Court stated,

> [P]etitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California.  Petitioner South wrote and

> petitioner Calder edited an article that they knew would have a
> potentially devastating impact upon respondent.  And they knew
> that the brunt of that injury would be felt by respondent in the
> State in which she lives and works and in which the *National
> Enquirer* has its largest circulation.  Under the circumstances,
> petitioners must "reasonably anticipate being haled into court
> there" to answer for the truth of the statements made in their
> article. . . .

*Id.* at 789-90 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

(1980)).

The *Calder* analysis has been applied to support personal jurisdiction in Florida over

individuals who, in their capacity as corporate officers, engaged in intentional misconduct

allegedly in violation of the Florida Deceptive and Unfair Trade Practices Act.  *State v.

Wyndham Int'l, Inc.*, 869 So. 2d 592, 600 (Fla. 1st Dist. Ct. App. 2004).  It has also been

applied to support personal jurisdiction in a Florida federal court over individuals who, in

their capacity as corporate officers, were primary participants in alleged securities fraud.

*SEC v. Carrillo*, 115 F.3d 1540, 1547-48 (11th Cir. 1997).

The record in this case reflects that Cothran intentionally made statements the

Plaintiffs allege were fraudulent to Plaintiffs who are  located in Florida.  As such, Cothran's

contacts with the forum state are directly related to the cause of action for fraudulent

misrepresentation.  Cothran purposely availed himself of the forum by directing these

statements to individuals who are employees of companies whose principal places of

business were in Florida.  Further, Cothran knew that any injury resulting from Plaintiffs'

reliance on his statements would be felt by the Plaintiffs at their Florida businesses.  Under

these circumstances, Cothran could reasonably anticipate being haled into court in Florida

to answer to the truth of the statements he made.  Accordingly, Cothran has sufficient minimum contacts with Florida to satisfy due process.

       3.     *Fair Play and Substantial Justice*.

Once the plaintiff has established that a defendant has sufficient minimum contacts with the forum to satisfy due process, the burden rests with the defendant to show that other factors make the exercise of jurisdiction inconsistent with the traditional notions of "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)(quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).  Among the factors the court should consider are "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Id*. at 477 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292).

Cothran offered no evidence or argument that the burden on him would be great if forced to defend this case in Florida.  Florida has an interest in protecting its corporate citizens from fraud through adjudication of this dispute.  Protecting citizens of a state is a shared interest serving the fundamental substantive social policies of the several states.  Plaintiffs will obtain the most convenient relief in Florida, where they are located.  The judicial system likewise benefits from resolution of this dispute in the location of the governing state law.  Accordingly, exercising personal jurisdiction over Cothran will not offend the traditional notions of fair play and substantial justice.

For these reasons, the Court may exercise specific personal jurisdiction over Cothran.  Accordingly, it is unnecessary to address Plaintiffs' alternative argument that the Court could also exercise general personal jurisdiction over Cothran.

**V.   RECOMMENDATION.**

Based on the foregoing analysis, I respectfully recommend that the Court **DENY** Defendant Marshall G. Cothran's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction, doc. no. 25.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 18, 2006.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy